# United States Court of Appeals for the Federal Circuit

---

**R.T. FOODS, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1188

---

Appeal from the United States Court of International Trade in No. 09-CV-0455, Judge Gregory W. Carman.

---

Decided: July 3, 2014

---

PETER S. HERRICK, Peter S. Herrick, P.A., of Miami, Florida, argued for plaintiff-appellant.

BEVERLY A. FARRELL, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and AMY M. RUBIN, Acting Assistant Director.

---

Before DYK, CLEVENGER, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge*.

R.T. Foods, Inc. ("R.T.") appeals the decision of the United States Court of International Trade ("CIT") denying its motion for summary judgment and granting the cross-motion for summary judgment of the United States (the "Government"). *See R.T. Foods, Inc. v. United States*, 887 F. Supp. 2d 1351 (Ct. Int'l Trade 2012). Because the CIT properly classified R.T.'s products, this court affirms.

BACKGROUND

Between October 2007 and August 2008, R.T. made twenty-four entries of "Tempura Vegetables" and "Vegetable Bird's Nests" from Thailand ("subject merchandise"), ten through the port of Boston and fourteen through the port of Long Beach. "The parties do not dispute the identity of the subject merchandise: frozen tempura-battered vegetable mixtures sold under the names of 'Vegetable Bird's Nests' and 'Tempura Vegetables.'" *Id.* at 1353. The "Vegetable Bird's Nests" product consists of julienne-cut carrots, onion, and kale, which are "mixed together, dipped in tempura batter, deep fried, flash frozen," and packaged for retail. *Id.* The "Tempura Vegetables" medley consists of "three Bird's Nests, three pieces of sweet potato, three pieces of carrot, three pieces of wing bean, three pieces of long or green bean, and three pieces of eggplant"; the individual vegetables are dusted with tempura batter, deep fried, flash frozen, and packaged for retail. *Id.*

United States Customs and Border Protection ("Customs") classified the ten Boston entries and three of the Long Beach entries under the Harmonized Tariff Schedule of the United States[1] ("HTSUS") subheading

---

[1] All references to the HTSUS refer to the 2008 edition.

2004.90.85,[2] which carries a duty rate of 11.2%.  The remaining eleven entries into the port of Long Beach were liquidated under R.T.'s proposed subheading, HTSUS 2106.90.99,[3] which carries a duty-free preference for products from Thailand.  According to Customs, the latter entries were accidentally entered duty-free under R.T.'s claimed subheading.

In March 2009, R.T. timely filed three protests challenging Customs' classification of all twenty-four entries.  After the protests were denied, R.T. commenced this action at the CIT in October 2009.  The parties filed motions for summary judgment.  As an initial matter, the CIT held it only had jurisdiction over three of the twenty-four entries.[4]  On December 14, 2012, the CIT denied

---

[2]    HTSUS 2004.90.85 covers "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables: Other: Other, including mixtures."

[3]    HTSUS 2106.90.99 provides for "Food preparations not elsewhere specified or included: Other: Other: Other: Frozen."

[4]    Under 28 U.S.C. § 2636(a)(1) (2006), a civil action challenging Customs' denial of a protest must be commenced within 180 days of mailing of the notice of the denial.  Therefore, the CIT found it was barred from hearing a challenge to one of the three protests, which covered the ten entries into the port of Boston, because it fell outside this limitations period.  *R.T. Foods*, 887 F. Supp. 2d at 1355.  As to the eleven entries into the port of Long Beach covered by another protest, the CIT found these entries had already liquidated in R.T.'s favor.  Thus, there was no case or controversy as to these entries, so the CIT lacked jurisdiction over them.  *Id.* at 1356.  R.T.

R.T.'s motion for summary judgment and granted the Government's cross-motion for summary judgment, thereby upholding Customs' classification of the subject merchandise under HTSUS 2004.90.85.

Appellant filed a timely appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

DISCUSSION

I. Standard of Review

This court reviews the CIT's grant of summary judgment on tariff classifications de novo. *Lemans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011); *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). In assessing Customs' classification determinations, this court employs the two-step analysis used by the CIT: (1) ascertaining "the proper meaning of the tariff provisions, which is a question of law reviewed de novo"; and (2) determining "whether merchandise falls within a particular heading, which is a question of fact we review only for clear error." *Lemans*, 660 F.3d at 1315 (citing *Cummins*, 454 F.3d at 1363). However, "[w]here, as here, the nature of the merchandise is undisputed, the inquiry collapses into a question of law we review de novo." *Id.*; *see R.T. Foods*, 887 F. Supp. 2d at 1359 ("Since there is no dispute between the parties as to the nature of the merchandise involved in this case and the only issues to be resolved are legal, the case is ripe for disposal at the summary judgment stage."). Accordingly, there are no genuine factual disputes precluding summary judgment. *See Link Snacks, Inc. v. United States*, 742 F.3d 962, 966 (Fed. Cir. 2014).

---

Foods has not appealed these determinations so only the classification of three of the entries remains at issue.

## II. Legal Framework

### A. Classification Pursuant to the HTSUS

The HTSUS is composed of classification headings, each of which has one or more subheadings. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1366 (Fed. Cir. 2013). "The headings contain 'general categories of merchandise,' whereas 'the subheadings provide a more particularized segregation of the goods within each category.'" *Id.* (quoting *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439 (Fed. Cir. 1998)). Along with the headings and subheadings, which are enumerated in chapters 1 through 99 of the HTSUS (each of which has its own section and chapter notes), the HTSUS statute also contains the "General Notes," the "General Rules of Interpretation" ("GRI"), the "Additional United States Rules of Interpretation" ("ARI"), and various appendices for particular categories of goods.[5] *See Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (citing 19 U.S.C. § 3004(a) (1994)). The classification of merchandise is governed by the GRIs and the ARIs, which are applied in numerical order. *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011).

The classification analysis always begins with GRI 1, which directs that "classification shall be determined according to the terms of the *headings* and any relative section or chapter notes." HTSUS GRI 1 (emphasis added); *see Orlando Food*, 140 F.3d at 1440 ("[A] court

---

[5] The World Customs Organization's "Explanatory Notes," which accompany each chapter of the HTSUS, are "not legally binding, are 'persuasive[,]' and are 'generally indicative' of the proper interpretation of the tariff provision." *Lemans*, 660 F.3d at 1316 (quoting *Drygel, Inc. v. United States,* 541 F.3d 1129, 1134 (Fed. Cir. 2008)).

first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading."). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)). Pursuant to GRI 1, the possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings. *Orlando Food*, 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise. . . . [W]hen determining which heading is . . . more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings."); *EOS of N. Am., Inc. v. United States*, 911 F. Supp. 2d 1311, 1327–28 (Ct. Int'l Trade 2013); *BASF Corp. v. United States*, 798 F. Supp. 2d 1353, 1362 (Ct. Int'l Trade 2011). Finally, if the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs. *See CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (citing *Mita Copystar Am. v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998)) ("We apply GRI 1 as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative.").

## B. The Competing Headings

Customs classified the subject merchandise under HTSUS 2004, which provides for "Other vegetables prepared or preserved otherwise than by vinegar or acetic

acid, frozen, other than products of heading 2006."[6]  This heading is an eo nomine provision, or one that "describes an article by a specific name." *CamelBak Prods.*, 649 F.3d at 1364 (citing *Carl Zeiss,* 195 F.3d at 1379).  "[A]n eo nomine provision includes all forms of the named article, including improved forms." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 646 (Fed. Cir. 2013) (citing *Camel-Bak Prods.,* 649 F.3d at 1364–65).  However, "when an article 'is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and *the difference is significant*,' it is not properly classified within an *eo nomine* provision." *CamelBak Prods.*, 649 F.3d at 1365 (emphasis added) (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1097 (Fed. Cir. 1996)).  To determine whether such a difference is significant enough to remove an article from an eo nomine provision, this court has looked to "'whether the item possess[es] features *substantially in excess* of those within the common meaning of the term,'" or whether the subject article is "a change in identity of the article described by the statute." *Id.* (alteration in original) (citations omitted).

R.T.'s proposed heading is HTSUS 2106, which provides for "Food preparations not elsewhere specified or included."  This heading is a "basket provision" as indicated by the terms "not elsewhere specified or included." *Int'l Bus. Machs. Corp. v. United States*, 152 F.3d 1332, 1338 (Fed. Cir. 1998); HTSUS 2106.  "A basket provision is not a specific provision." *Int'l Bus. Machs.*, 152 F.3d at 1338.  Therefore, "[c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifi-

---

[6]    HTSUS 2006 concerns "[v]egetables, fruit, nuts, fruit-peel and other parts of plants preserved by sugar" and therefore is inapplicable here.

cally." *Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1251 (Ct. Int'l Trade 2000), *aff'd,* 282 F.3d 1349 (Fed. Cir. 2002). In other words, because HTSUS 2106 is a basket provision, any products that are "specified or included" in another tariff heading cannot be classified in HTSUS 2106.

### III. The Subject Merchandise Was Properly Classified in HTSUS 2004

The CIT found the subject merchandise fell under the eo nomine heading of HTSUS 2004, stating "[t]o *prima facie* fall under heading 2004 . . . five criteria must be met: the products must be (1) vegetables that are (2) prepared or preserved, (3) otherwise than by vinegar or acetic acid, which are (4) frozen, and are (5) other than products of heading 2006." *R.T. Foods*, 887 F.2d at 1358. The CIT explained that both the "Vegetable Bird's Nests" and the "Tempura Vegetables" satisfied all five criteria because "they are (1) vegetables that are (2) prepared (3) in tempura batter, not in vinegar or acetic acid, which are (4) flash frozen, and are (5) not products preserved by sugar as provided for by heading 2006." *Id.* After finding the subject merchandise prima facie fell within HTSUS 2004, the CIT then "review[ed] . . . the possible subheadings" and determined "the proper subheading is 2004.90.85," which provides for "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables: Other: Other, including mixtures." *Id.* at 1359; HTSUS 2004.

In doing so, the CIT rejected R.T.'s proposed heading, HTSUS 2106, which it described as "an expansive basket heading that only applies in the absence of another applicable heading." *R.T. Foods*, 887 F.2d at 1358 ("To *prima facie* fall under [HTSUS] 2016 . . . two criteria must be met: the products must be (1) a food preparation, which is (2) not elsewhere specified or included. Both Bird['s]

Nests and Vegetable Medley satisfy the first criterion, but not the second: they are (1) a food preparation by common meaning, but they are (2) elsewhere specified or included."). The CIT also noted "Customs has consistently classified tempura-coated products by the underlying main food dipped into the tempura batter, not as a food preparation." *Id.*

R.T. argues the CIT erred in classifying the subject merchandise under the eo nomine provision of HTSUS 2004 because "[t]here is a significant difference between *eo nomine* vegetables in heading 2004 . . . and RT's products which changed the identity of the vegetables to pre-made ready-to-eat meals." Appellant's Br. 3. In other words, according to R.T., because its manufacturing process changed the identity of the vegetables, the products were removed from the eo nomine provision. *Id.* at 1, 7–8; Reply 2–3 ("[T]he processing of the original vegetables . . . transforms the vegetables into a 'food preparation' distinct from vegetables that are simply prepared or preserved. It is that transformation—a change in identity—that precludes the use of subheading 2004.90.85."). In support, R.T. points to Note 1 to Chapter 20, which specifies that Chapter 20, under which HTSUS 2004 falls, does not cover vegetables prepared or preserved by the processes described in Chapter 7, which "covers vegetables, . . . whether fresh, chilled, frozen (uncooked or cooked by steaming or boiling in water), provisionally preserved or dried (including dehydrated, evaporated or freeze-dried)." HTSUS ch. 20, note 1; HTS ch. 7, Explanatory Note 1 (J.A. 186). To Appellant, because its products "have been cut, wrapped in tempura batter, deep-fried and frozen in a process as specified under Chapter 7, they cannot be classified under Chapter 20." Appellant's Br. at 8–9.

R.T. also argues that, because classification under heading 2004 is incorrect, the CIT erred in failing to perform a "principle use" analysis, which R.T. contends

would have led the CIT to conclude that classification pursuant to R.T.'s proposed basket provision was proper. A "principle use" analysis is only used for those headings "controlled by use," as opposed to eo nomine headings. *See* HTSUS ARI 1(a). Such an analysis involves determining "the use which exceeds any other *single* use" of the merchandise in the United States. *Aromont USA Inc. v. United States*, 671 F. 3d 1310, 1312 (Fed. Cir. 2012); HTSUS ARI 1(a). Appellant argues, under such an analysis, "RT's food preparations are not principally used as vegetables. RT's consumer's expectation is to buy a pre-made meal that 'makes even the worst cook look like a pro.'"[7] Appellant's Br. 3 (citation omitted). According to Appellant, the manufacturing process of the subject merchandise transforms the vegetables into a product that is principally used as a pre-made meal.

The subject merchandise is properly classified under HTSUS 2004. As noted, the identity of the subject merchandise is not in dispute; the only issue is whether the products are named by the eo nomine provision or whether they differ so significantly they can no longer be properly classified within this provision. *See CamelBak Prods.*, 649 F.3d at 1365 ("In order to determine whether the subject article is classifiable within an *eo nomine* provision, we look to whether the subject article is *merely an improvement* over or whether it is, instead, a *change in identity* of the article described by the statute." (emphases added)). The merchandise named by HTSUS 2004 in-

---

[7]     R.T.'s record citations do not at all show the subject products are pre-made meals. *See* J.A. 52, 106. Indeed, at oral argument, R.T.'s counsel conceded the subject merchandise was not "referenced at all" in the portion of the record cited by R.T. for that proposition. Oral Arg. at 28:37–29:00, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2013-1188/all.

cludes "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of [HTSUS] 2006." This court agrees with the CIT that the subject merchandise prima facie falls into this heading because the products are (1) vegetables, (2) that are prepared, (3) in tempura batter (and not in vinegar or acetic acid), (4) flash frozen, and are (5) not products preserved by sugar as provided for by HTSUS 2006.

R.T.'s argument that its manufacturing process transformed the vegetables into pre-made ready-to-eat meals is unsupported by any evidence and is unpersuasive. This court has noted there are "several analytical tools or factors [used] to assess whether the subject articles are beyond the reach of [an] *eo nomine* . . . provision," which include the design, use, and function of the subject articles. *CamelBak Prods.*, 649 F.3d at 1367. R.T. has not identified a feature or component of the subject merchandise that so substantially transforms the vegetables so as to remove them from the eo nomine provision. Furthermore, R.T. has not shown how tempura battering and frying does not fall within the eo nomine provision's specification that the frozen vegetables be "prepared or preserved otherwise than by vinegar or acetic acid." Absent such a substantial transformation, it is clear the merchandise falls within the scope of heading 2004.

Additionally, there is no basis for interpreting the heading so as to exclude merchandise prepared in this manner. This court has cautioned that "we should not read a use limitation into an *eo nomine* provision unless the name itself inherently suggests a type of use." *Kahrs Int'l*, 713 F.3d at 646 ("While Kahrs' merchandise possesses some unique features related to its intended use . . . , we disagree with Kahrs that these features are sufficiently significant to transform its identity . . . and we see no reason to read additional limitations into the tariff schedule."). There is no such suggestion in this eo nomine provision that a use limitation is appropriate, nor

is there any indication that the identity of the goods was so significantly transformed so as to remove the goods from this provision. *See CamelBak Prods.*, 649 F.3d at 1365. Accordingly, R.T. has failed to show that its products possess a feature or component that endows them with a unique identity substantial enough to justify removal from the scope of the eo nomine provision in which they prima facie fall.

As to R.T.'s argument that classification under HTSUS 2004 is precluded by Note 1(a) to Chapter 20, R.T. is correct that HTSUS 2004 is qualified by Note 1(a), which provides: "This chapter does not cover: (a) Vegetables, fruit or nuts, prepared or preserved by the processes specified in chapter 7, 8 or 11." However, Chapters 8 and 11 do not encompass vegetables, and Chapter 7 covers various vegetables that are "fresh, chilled, frozen (*uncooked or cooked by steaming or boiling in water*), *provisionally preserved or dried* (including dehydrated, evaporated or freeze-dried)." J.A. 186 (emphasis added). R.T. has offered no record evidence that the subject merchandise is prepared or preserved by the processes included within HTSUS Chapter 7. Indeed, while the "Vegetable Bird's Nests" and the "Tempura Vegetables" are comprised of frozen vegetables, they are not "uncooked or cooked by steaming or boiling in water," nor are they "provisionally preserved or dried." Because Chapter 7 does not include processes such as dipping in batter and frying, the subject merchandise is not excluded from HTSUS 2004 by virtue of Note 1(a) to Chapter 20.

Finally, because the subject merchandise is "specially provided for" elsewhere, *Int'l Bus. Machs.*, 152 F.3d at 1338, classification under R.T.'s proposed basket provision is inappropriate. R.T.'s proposed "principal use" analysis has no bearing on the proper classification of the subject merchandise because the products are named by an eo nomine provision.

## IV. The Subject Merchandise Was Properly Classified in Subheading 2004.90.85

Having determined the proper heading, this court must now determine the proper subheading for the subject merchandise. Upon independent review of HTSUS 2004's subheadings, this court finds the subject merchandise is properly classified under subheading 2004.90.85. The subheadings of HTSUS 2004 are as follows:

| | |
|---|---|
| 2004 | Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: |
| 2004.10 | Potatoes |
| 2004.10.40 | Yellow (Solano) potatoes |
| 2004.10.80 | Other |
| |     French fries |
| |     Other |
| 2004.90 | Other vegetables and *mixtures of vegetables*: |
| 2004.90.10 | Antipasto |
| 2004.90.80 | Beans |
| 2004.90.85 | *Other* |
| |     Carrots |
| |     Sweet corn |
| |     Peas |
| |     *Other, including mixtures* |

HTSUS 2004 (emphases added). Because the subject merchandise is not "potatoes" it is properly classified under subheading 2004.90, which encompasses "mixtures of vegetables." Furthermore, because the subject merchandise is not "antipasto" or "beans," it is properly classified under subheading 2004.90.85 for "Other: Other, including mixtures."

CONCLUSION

Accordingly, the decision of the Court of International Trade is

**AFFIRMED**