# United States Court of Appeals for the Federal Circuit

---

**APPLE INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2019-1869

---

Appeal from the United States Court of International Trade in No. 1:13-cv-00239-CRK, Judge Claire R. Kelly.

---

Decided: July 2, 2020

---

CATHERINE EMILY STETSON, Hogan Lovells US LLP, Washington, DC, for plaintiff-appellant. Also represented by CRAIG A. LEWIS, MICHAEL WEST; JAMES EDWARD RANSDELL, IV, DAVID PHILLIPS SANDERS, Cassidy Levy Kent USA LLP, Washington, DC.

BEVERLY A. FARRELL, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, New York, NY, for defendant-appellee. Also represented by JUSTIN REINHART MILLER; JOSEPH H. HUNT, JEANNE DAVIDSON, Washington, DC; PAULA S. SMITH, Office of the Assistant Chief Counsel, United States Bureau of Customs and Border Protection,

United States Department of Homeland Security, New York, NY.

————————————

Before NEWMAN, DYK, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Apple Inc. ("Apple") filed suit against Appellee United States ("the Government") in the U.S. Court of International Trade ("CIT"), challenging U.S. Customs and Border Protection's ("Customs") classification of Apple's iPad 2 Smart Cover ("Smart Cover"), model number MC939LL/A, under Harmonized Tariff Schedule of the United States ("HTSUS") Subheading 6307.90.98.[1] Apple and the Government filed cross-motions for summary judgment, with Apple contending that its subject merchandise is properly classified under HTSUS Subheading 8473.30.51, duty free, and the Government contending that Apple's subject merchandise is properly classified under HTSUS Subheading 3926.90.99, at a duty rate of 5.3 percent *ad valorem.* The CIT denied Apple's Cross-Motion and granted the Government's, concluding, inter alia, that the subject merchandise was properly classified under HTSUS Subheading 3926.90.99. *Apple Inc. v. United States*, 375 F. Supp. 3d 1288, 1305 (Ct. Int'l Trade 2019); *see* J.A. 1 (Judgment).

Apple appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). We affirm.

---

[1] "All citations to the HTSUS refer to the 20[11] version, as determined by the date of importation of the merchandise." *LeMans Corp. v. United States*, 660 F.3d 1311, 1314 n.2 (Fed. Cir. 2011).

BACKGROUND

I. The Subject Merchandise

This appeal involves a single entry of merchandise, made by Apple "at the port of San Francisco International Airport, San Francisco, California on January 28, 2011." *Apple*, 375 F. Supp. 3d at 1295 (citation omitted).[2] The entry consisted of two models of the Smart Cover, which "differ[ed] as to their outer layer," with one made of leather and the other "composed of plastic." *Id.* (citation omitted). Only the classification of the Smart Cover with plastic outer layer, model number MC939LL/A, remains at issue on appeal. *See* Appellant's Br. 4; Appellee's Br. 2.[3]

The Smart Cover is a "thin, durable cover" designed for exclusive use with the iPad 2. J.A. 164; *see* J.A. 306–07 (Apple stipulating that the Smart Cover is described as a "computer cover" in commercial invoices); *see also Apple*, 375 F. Supp. 3d at 1295 (providing that the Smart Cover is "sized to fit directly and precisely over the screen of an iPad 2").[4] The Smart Cover is "rectangular in shape" and "is

---

[2]    Because the parties do not dispute the material facts, we cite to CIT's recitation of the facts for ease of reference. *See Apple*, 254 F. Supp. 3d at 1295–96.

[3]    The CIT held that Apple did "not have standing to challenge Customs' classification of the leather Smart Covers" because Customs had liquefied the leather Smart Covers duty-free, such that Apple "ha[d] not suffered an injury or harm that the [CIT's] order [could] redress." *Apple*, 375 F. Supp. 3d at 1297. Apple does not challenge this on appeal. *See* Appellant's Br. 4.

[4]    The iPad 2 is a "portable," "automatic data processing machine classifiable under [HTSUS] [H]eading 8471." *Apple*, 375 F. Supp. 3d at 1295; *see* HTSUS Heading 8471 (covering "automatic data processing machines"); HTSUS Ch. 84 Note 5(A) (explaining that, "[f]or the

constructed of [four] rectangular panels" that may be "fold[ed] . . . into a [triangular] 'stand' position" for viewing the iPad's screen. *Apple*, 375 F. Supp. 3d at 1295–96; *see* J.A. 71 (Apple expert declaration, explaining that the Smart Cover consists of "four panels" that may be folded to function as both a cover and a stand), 78–79 (advertising materials with images of the Smart Cover "fold[ed] into . . . [a] stand"), 164 (advertising materials, explaining that the "Smart Cover does double duty as a . . . stand"). Its exterior "is composed of plastic," *Apple*, 375 F. Supp. 3d at 1295 n.8; *see id.* (noting that Apple avers that the exterior is, more specifically, "comprised of polyethylene and polyurethane"), with interior microfiber lining to clean the iPad 2's screen, *id.* at 1296, and "an aluminum hinge" spine, *id.* at 1295. "The Smart Cover aligns with" and "attache[s] to the iPad 2" by means of "magnets that are integrated into the edge of the iPad 2 and the Smart Cover's spine." *Id.*; *see* J.A. 80 (advertising materials, explaining that magnets within the iPad 2 "align . . . with the Smart Cover hinge" and that "magnets inside the Smart Cover help it stay put"). The iPad 2 contains a sensor such that, "when the Smart Cover is closed, the iPad 2 automatically enters sleep mode, and when it is open, the iPad 2 [automatically] turns on[.]" *Apple*, 375 F. Supp. 3d at 1296; *see* J.A. 80 (similar).

## II. Procedural History

In July 2011, Customs liquidated the plastic Smart Covers under HTSUS Subheading 6307.90.98, at a duty rate of 7 percent *ad valorem*. *Apple*, 375 F. Supp. 3d at 1295;

---

purposes of [HTSUS] [H]eading 8471, . . . 'automatic data processing machines' means machines capable of," inter alia, "[s]toring the processing program or programs and at least the data immediately necessary for the execution of the program" and "[b]eing freely programmed in accordance with the requirements of the user").

*see* HTSUS Subheading 6307.90.98 (covering "Other made up articles, including dress patterns: Other: Other"). Apple filed a protest of this action, asserting that the Smart Cover should have been classified under HTSUS Subheading 8473.30.51, duty free. *Apple*, 375 F. Supp. 3d at 1294; *see* 19 U.S.C. § 1514 (providing that an importer may protest to Customs "the classification and rate and amount of duties chargeable" on an entry); HTSUS 8473.30.51 (covering "Parts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with machines of headings 8469 to 8472: Parts and accessories of the machines of heading 8471: Other"). In October 2012, Customs issued ruling HQ H216396, "address[ing] the proper classification" of two different Smart Cover models "materially similar" to, but not the same as that at issue here. *Apple*, 375 F. Supp. 3d at 1293–94; *see* J.A. 55 (HQ H216396) (addressing Smart Cover model nos. MS309/LLA and MD301/LLA, with plastic and leather exteriors, respectively). HQ H216396 "rejected [Apple's] position" that Smart Covers "are classifiable under [HTSUS] [H]eading 8473" and "ruled that the plastic iPad Smart Cover is properly classified under [HTSUS] [S]ubheading 3926.90.99," at a duty rate of 5.3 percent *ad valorem*. *Apple*, 375 F. Supp. 3d at 1294; *see* HTSUS Subheading 3926.90.99 (covering "Other articles of plastics and articles of other materials of headings 3901 to 3914: Other: Other"); *see also* J.A. 61 (HQ H216396). In January 2013, Customs denied Apple's protest. *Apple*, 375 F. Supp. 3d at 1293; *see* 19 U.S.C. § 1515 (providing Customs with the authority to review protests made under 19 U.S.C. § 1514).

In July 2013, Apple filed a summons and complaint before the CIT, contesting Customs' denial of Apple's protest. *Apple*, 375 F. Supp. 3d at 1294; *see* 28 U.S.C. § 1581(a) (giving the CIT "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]"). The parties cross-moved

for summary judgment. *Apple*, 375 F. Supp. 3d at 1292. Apple continued to argue for classification of its merchandise under HTSUS Subheading 8473.30.51, duty free. *Id.* The Government sought classification of Apple's merchandise under HTSUS Subheading 3926.90.99, in keeping with HQ H216396, rather than HTSUS Subheading 6307.90.98, under which Customs had originally liquidated the plastic Smart Covers. *Id.* at 1292–93.

The CIT concluded that the plastic Smart Covers "are properly classifiable within [HTSUS] [S]ubheading 3926.90.99." *Id.* at 1305. The CIT reasoned that, because HTSUS Subheading 8473.30.51 expressly excludes accessories that are "covers, carrying cases and the like," *id.* at 1300, and Apple's Smart Cover was, undisputedly, an accessory, but also a cover, the Smart Cover could not be properly classified under HTSUS Subheading 8473.30.51, *id.* at 1303. The CIT then concluded that, while the Smart Cover is a "composite good," composed of, inter alia, a "plastic outer layer," "a microfiber lining, an aluminum hinge, and magnets," "[t]he plastic outer layer of the Smart Cover gives the merchandise its essential character," such that the plastic Smart Cover is properly classifiable under HTSUS Subheading 3926.90.99. *Id.* at 1304.

## DISCUSSION

### I. Standard of Review and Legal Framework

The CIT "grant[s] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." U.S. Ct. Int'l Trade R. 56(a). We review the CIT's grant of summary judgment de novo, applying "the same standard employed by the [CIT] in assessing Customs' classification determinations." *Otter Prods., LLC v. United States*, 834 F.3d 1369, 1374–75 (Fed. Cir. 2016) (internal citation omitted). "[W]e give great weight to the informed opinion of the CIT and it is nearly always the starting point of our analysis." *Schlumberger Tech. Corp. v. United*

*States*, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (internal quotation marks, alterations, and citation omitted).

"The classification of merchandise involves a two-step inquiry." *ADC Telecomms., Inc. v. United States*, 916 F.3d 1013, 1017 (Fed. Cir. 2019). First, we "determin[e] the proper meaning" of the terms within the relevant tariff provision, "which is a question of law," and, second, we determine whether the subject merchandise "falls within" those terms, "which is a question of fact." *Sigma-Tau Health Sci., Inc. v. United States*, 838 F.3d 1272, 1276 (Fed. Cir. 2016). "The first step presents a question of law that we review de novo, whereas the second involves an issue of fact that we review for clear error." *Schlumberger*, 845 F.3d at 1162. "Where, as here, no genuine dispute exists as to the nature of the subject merchandise, the two-step inquiry collapses into a question of law we review de novo." *ADC*, 916 F.3d at 1017 (internal quotation marks and citation omitted).

The HTSUS governs the classification of merchandise imported into the United States. *See Wilton Indus., Inc. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). The HTSUS is "considered . . . [a] statutory provision[] of law for all purposes." 19 U.S.C. § 3004(c)(1); *see Chemtall, Inc. v. United States*, 878 F.3d 1012, 1026 (Fed. Cir. 2017) (explaining that "the tenth-digit statistical suffixes . . . are not statutory," as those suffixes are not incorporated in the HTSUS's legal text). "The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." *Wilton Indus.*, 741 F.3d at 1266. "The first four digits of an HTSUS provision constitute the heading, whereas the remaining digits reflect subheadings." *Schlumberger*, 845 F.3d at 1163 n.4. "[T]he headings and subheadings . . . are enumerated in chapters 1 through 99 of the HTSUS (each of which has its own section and chapter notes)[.]" *R.T. Foods, Inc. v. United*

*States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014). There are two types of HTSUS headings, "*eo nomine* [and] use provisions." *Schlumberger*, 845 F.3d at 1164. "[A]n *eo nomine* provision . . . describes an article by a specific name." *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (citation omitted). A use provision describes an article by its principal or actual use. *See Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1313 (Fed. Cir. 2012).

The HTSUS "contains the 'General Notes,' the 'General Rules of Interpretation' ('GRI'), the 'Additional [U.S.] Rules of Interpretation' ('ARI'), and various appendices for particular categories of goods." *R.T. Foods*, 757 F.3d at 1353 (footnote omitted). The GRI and ARI govern the classification of goods within the HTSUS. *See Otter Prods.*, 834 F.3d at 1375. The GRI "govern the proper classification of all merchandise[.]" *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The ARI are specific to use provisions. *See Schlumberger*, 845 F.3d at 1163 n.5 (explaining that the ARI do not apply to *eo nomine* provisions).

The GRI "apply in numerical order, meaning that subsequent rules are inapplicable if a preceding rule provides proper classification." *Id.* at 1163. GRI 1 provides, in relevant part, that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1. "Under GRI 1, [we] first construe[] the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Schlumberger*, 845 F.3d at 1163 (internal quotation marks and citation omitted). "[T]he possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings." *R.T. Foods*, 757 F.3d at 1353 (citations omitted). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Well Luck Co. v. United States*, 887

F.3d 1106, 1111 (Fed. Cir. 2018) (internal quotation marks and citation omitted). "To discern the common meaning of a tariff term, we may consult dictionaries, scientific authorities, and other reliable information sources." *Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 644 (Fed. Cir. 2013) (citation omitted). We may also consider the relevant Explanatory Notes ("EN"). *See Fuji Am. Corp. v. United States*, 519 F.3d 1355, 1357 (Fed. Cir. 2008). "The [E]xplanatory [N]otes provide persuasive guidance and are generally indicative of the proper interpretation, though they do not constitute binding authority." *Chemtall*, 878 F.3d at 1019 (internal quotation marks and citation omitted).

GRI 3 provides guidance when "goods are, prima facie, classifiable under two or more headings." GRI 3.[5] In such cases "[t]he heading which provides the most specific description shall be preferred to headings providing a more general description." GRI 3(a). "Under this rule of relative specificity, we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Carl Zeiss*, 195 F.3d at 1380 (internal quotation marks and citation omitted). "[C]omposite goods" that "cannot be classified by reference to [GRI] 3(a), shall be classified as if they consisted of the material or component which gives them their essential character[.]" GRI 3(b). The essential character inquiry "var[ies] as between different kinds of goods," and "may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." *Home Depot U.S.A., Inc. v. United States*, 491 F.3d 1334, 1336–37 (Fed. Cir. 2007) (quoting EN (VIII) to GRI 3(b)). "[T]he essential character of the subject

---

[5] GRI 2 applies to "incomplete or unfinished article[s]," GRI 2(a), and "mixtures or combinations of [a] material or substance," GRI 2(b), and is not relevant here.

articles is a question of fact." *CamelBak*, 649 F.3d at 1369. Once we determine the appropriate heading, we apply GRI 6 to determine the appropriate subheading. GRI 6 (providing that "the classification of goods" by subheadings "shall be determined according to the terms of those sub-headings and any related subheading notes and, *mutatis mutandis*, to the above [GRI], on the understanding that only subheadings at the same level are comparable").

The ARI contain specific rules for interpreting use provisions in the HTSUS. *See* ARI 1(a)–(d). ARI 1(a) provides that, when a tariff provision is "controlled by use (other than actual use)," then classification "is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use[.]" ARI 1(b) governs classification by "actual use." "[A]ctual use" considers only the "[a]ctual use of the imported goods"; "principal use" considers a variety of factors, including actual use, "to classify particular merchandise according to the ordinary use of such merchandise, even though particular imported goods may be put to some atypical use." *Aromont*, 671 F.3d at 1313–14 (internal quotation marks and citation omitted).

## II. The CIT Did Not Err in Granting Summary Judgment to the Government

### A. HTSUS Heading 8473 Excludes "Covers" Including Apple's Smart Cover

The CIT concluded that, because HTSUS Heading 8473 expressly excludes accessories that are "covers, carrying cases and the like," Apple's Smart Cover, as a cover, could not be properly classified under HTSUS Heading 8473. *Apple,* 375 F. Supp. 3d at 1301–02. Apple argues the CIT erred in its interpretation of HTSUS Heading 8473, because, while Heading 8473 excludes accessories that are "covers," the Explanatory Note to HTSUS Heading 8473

"creates an exception" to this exclusion, for "covers that also act as stands for certain machines." Appellant's Br. 16 (capitalization normalized). Apple argues that because the "Smart Cover is an 'accessory' and a 'cover' that is also a 'stand,' it is properly classified within [HTSUS] Heading 8473." *Id.* at 31 (capitalization normalized). We disagree with Apple.

The CIT did not err in concluding that HTSUS Heading 8473 expressly excludes "covers," including the Smart Cover. Tariff classification "shall be determined according to the terms of the headings and any relevant section or chapter notes." GRI 1. HTSUS Heading 8473 encompasses "accessories" except for "covers, carrying cases and the like[.]" HTSUS Heading 8473 (covering "[p]arts and accessories (other than covers, carrying cases and the like) suitable for use solely or principally with [certain] machines"). The section and chapter notes for HTSUS Heading 8473 provide no additional relevant guidance. *See generally* HTSUS Sect. XVI Notes; HTSUS Ch. 84 Notes. It is uncontested that the Smart Cover is an "accessory" within the meaning of HTSUS Heading 8473. Appellant's Br. 34; Appellee's Br. 14; *see Apple,* 375 F. Supp. 3d at 1300 ("An 'accessory' is therefore something that relates directly to and serves a secondary or subordinate function to the item accessorized."). It is uncontested that the Smart Cover is a "cover" within the meaning of HTSUS Heading 8473. Appellant's Br. 34; Appellee's Br. 14; *see Apple*, 375 F. Supp. 3d at 1301 ("A 'cover' is therefore something that goes over or encompasses a specific object and offers protection."). Accordingly, Apple's Smart Cover is expressly excluded from the scope of HTSUS Heading 8473. *See Schlumberger*, 845 F.3d at 1163 (providing that the GRI "apply in numerical order," such that "subsequent rules are inapplicable if a preceding rule provides proper classification"); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (providing that "[w]hen the words of a statute are unambiguous, then, this first canon [of statutory interpretation]

is also the last: 'judicial inquiry is complete'" (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981))).

Apple's counterarguments are unpersuasive. Apple argues that, because the Explanatory Note to HTSUS Heading 8473 "creates an exception to [HTSUS] [H]eading 8473 for covers that also act as stands for certain machines," Appellant's Br. 16 (capitalization normalized), "[HTSUS] Heading 8473 captures hybrid stand-covers like the Smart Cover," *id.* at 15. First, this argument misunderstands the purpose of Explanatory Notes. Explanatory Notes cannot create an exception to an HTSUS heading. Explanatory Notes are "generally useful as guides to the scope of unclear HTSUS headings, but they are not legally binding." *Sigma-Tau,* 838 F.3d at 1280 (internal quotation marks, alterations, and citation omitted); *see* H.R. REP. No. 100–576, at 549 (1988) (Conf. Rep.), *as reprinted in* 1988 U.S.C.C.A.N. 1547, 1582 ("Although generally indicative of proper interpretation of the various provisions of the [HTSUS], the Explanatory Notes . . . are not legally binding," and, therefore "should not be treated as dispositive."). They cannot be used to "narrow" or amend or create ambiguity in "the language of [a] [HTSUS] heading[.]" *Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1359 (Fed. Cir. 2003).

Second, Apple's argument is premised on a faulty reading of Explanatory Note 84.73. The plain language of Explanatory Note 84.73 does not support the conclusion that HTSUS Heading 8473 encompasses hybrid cover-stands. Explanatory Note 84.73 provides, in full:

> [HTSUS Heading 8473] excludes covers, carrying cases and felt pads; these are classified in their appropriate headings. It also excludes articles of furniture (e.g., cupboards and tables) whether or not specially designed for office use (heading 94.03). However, stands for machines of headings 84.69 to

> 84.72 not normally usable except with the machines in question, remain in this heading.

EN 84.73.  Apple argues that we should read the first and second sentence of the Explanatory Note as a continuous "general list" of exclusions, Appellant's Br. 20; *see id.* at 17–18 (arguing that the "covers and furniture exclusions are united by parallel language" and are "grammatically interdependent"), with the third sentence, "[t]he stands proviso[,] craft[ing] an exception" from both preceding exclusions, *id.* at 20.  Apple's reading is incorrect.  It is contrary to "the [rule] of the last antecedent and its corollary, the rule of punctuation[.]"  *Finisar Corp. v. DirecTV Grp., Inc.,* 523 F.3d 1323, 1336 (Fed. Cir. 2008).  It is also directly controverted by the drafting history of Explanatory Note 84.73.  *See WestRock Va. Corp. v. United States*, 941 F.3d 1315, 1320 (Fed. Cir. 2019) ("[S]tatements from the legislative history illuminate [the drafter's] intent[.]").

The "rule of the last antecedent" provides that, absent "other," contrary "indicia of meaning," "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Lockhart v. United States*, 136 S. Ct. 958, 962–63 (2016) (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).  The first two sentences of Explanatory Note 84.73 are not a continuous list.  They are two discrete sentences that provide two distinct exclusions.  *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993) ("[T]he meaning of a statute will typically heed the commands of its punctuation.").  The first sentence consists of two independent clauses separated by a semicolon:  It mirrors the language of HTSUS Heading 8473 to exclude "covers, carrying cases[,] and felt pads"; it indicates those goods should be "classified in their appropriate headings," whatever those are.  EN 84.73; *see* HTSUS Heading 8473 (excluding "covers, carrying cases[,] and the like").  The second sentence adds a new category of excluded goods, using parentheticals to better define and explain its application:  HTSUS

Heading 8473 also excludes "articles of furniture (e.g., cupboards and tables) whether or not specially designed for office use"—those are already covered by another HTSUS Heading "([HTSUS] [H]eading 9403)."   EN 84.73; *see* HTSUS Heading 9403 (covering "Other furniture and parts thereof," including "[m]etal furniture" like "racks, display cases, shelves, partitions and other similar fixtures," and "wooden furniture").  They are not "one collective point," as Apple believes.  Appellant's Br. 21.  Rather, "[e]ach clause," each sentence, "is distinct and ends with a period, strongly suggesting that each may be understood completely without reading any further." *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 344 (2005).  With their "varied syntax" and dissimilar goods, the two exclusions make—at best—a discontinuous list.  *See Lockhart*, 136 S. Ct. at 963 (explaining that when "a list of terms or phrases" has "varied syntax" or "items that readers are [not] used to seeing listed together," that list should not be read as a "'single, integrated list'" with a terminal qualifier modifying each item or phrase (quoting *Jama*, 543 U.S. at 344 n.4 )).

The third and final sentence of Explanatory Note 84.73 carves out an exception:  "However, stands for machines of [HTSUS] [H]eadings 84.69 to 84.72 not normally usable except with the machines in question, remain in this heading."  EN 84.73.  To the extent it relates to the preceding exclusions, it is governed by "the rule of the last antecedent." *Lockhart*, 136 S. Ct. at 962 (explaining that, when presented with "a list of terms or phrases followed by a limiting clause, we . . . typically appl[y] an interpretive strategy called the 'rule of the last antecedent'").  This means that it only applies to the exclusion immediately preceding it—the "furniture" exclusion.  *See Barnhart*, 540 U.S. at 26 ("Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent" (quoting 2A N. Singer, *Sutherland on Statutory Construction* § 47.33, p. 369 (6th rev. ed. 2000))).  Accordingly, Explanatory Note 84.73 indicates that HTSUS Heading

8473 excludes "covers, carrying cases[,] and felt pads" without exception. EN 84.73; *see* HTSUS Heading 8473 (similar). It further indicates that HTSUS Heading 8473 excludes "furniture," such as "cupboards and tables," unless that furniture is a "stand[] normally usable" only with certain, specified machinery. EN 84.73; *see* HTSUS Heading 8473 (enumerating relevant machinery).

If any doubt still remained, the drafting history of HTSUS Heading 8473 and EN 84.73 confirms our reading. Specifically, the subcommittee responsible for drafting both HTSUS Heading 8473 and EN 84.73 drafted the exclusions separately, with the "stands" exception connected to the "furniture exclusion." J.A. 297–99. The subcommittee first amended HTSUS Heading 8473 so that, rather than cover only "[p]arts . . . of [certain] machinery," it covered "[p]arts and accessories (other than covers, carrying cases[,] and the like) of [certain] machine[s][.]" J.A. 299. The subcommittee explained that this amendment "would make it clear that the heading includes certain auxiliary devices (e.g., copy holders and automatic spacing devices for typewriters) which, because they are detachable and of optional use, were not really parts of office appliances." J.A. 297. The subcommittee elected to "exclude 'covers, carrying cases and the like,'" from HTSUS Heading 8473, in keeping with "earlier decisions regarding [other] machines[.]" J.A. 297–98. The subcommittee amended Explanatory Note 84.73 to reflect the "[e]xclu[sion] [of] carrying cases, covers, felt pads, etc." J.A. 298. The subcommittee only then turned to the question of "[s]pecial articles of furniture supporting office appliances" and "decided to add a paragraph [to Explanatory Note 84.73] stating that the present heading covers stands for office machines, not normally usable except with those machines." J.A. 298. This shows that, when drafting Explanatory Note 84.73, the subcommittee considered the exempted "stands" to be "[s]pecial articles of furniture," unrelated to any "[e]xclusions" for "carrying cases, covers,

[and] felt pads." J.A. 298. This confirms, as the language of Explanatory Note 84.73 suggests, that Explanatory Note 84.73's "covers" exclusion and "furniture" exclusion are distinct, and that the "stand" exception applies only to the immediately preceding "furniture" exclusion. EN 84.73. Explanatory Note 84.73, therefore, does not suggest, much less create, an exception to HTSUS Heading 8473's exclusion of "covers" for hybrid cover-stands.

Apple further argues that, because HTSUS Heading 8473 is a "principal-use provision," Appellant's Br. 33, the CIT erred by failing to consider the Smart Cover's principal use as a stand, *id.* at 34. Apple argues that "because the Smart Cover is not just a cover, it does not fall within" HTSUS Heading 8473's "exclusion" of covers. *Id.* (emphasis omitted). This argument is without merit. It is predicated on the assumption that Explanatory Note 84.73 creates an exception for hybrid cover-stands to HTSUS Heading 8473's exclusion of covers. *See* Appellant's Br. 34 (arguing that "[t]he Smart Cover" is classifiable under HTSUS Heading 8473 "because it is a 'stand' according to the . . . requirements of the Explanatory Notes proviso" (citing EN 84.73)). As discussed above, it does not. Further, while HTSUS Heading 8473 is a principle-use provision, this does not alter our reading of "cover." HTSUS Heading 8473 requires that an accessory be "suitable for use solely or principally with [certain] machines." HTSUS Heading 8473. It is uncontested that Apple's Smart Cover is "solely or principally" for use with the iPad 2. *Apple,* 375 F. Supp. 3d at 1295–96. This does not obviate the need to apply GRI 1 to the remaining terms of HTSUS Heading 8473. *See Carl Zeiss*, 195 F.3d at 1379 (explaining that the GRI "govern the proper classification of all merchandise"). Nor does it compel us to give the terms of HTSUS Heading 8473 a meaning other than their "common and commercial meaning." *Well Luck*, 887 F.3d at 1111 (internal quotation marks and citation omitted). Accordingly, the CIT properly concluded that HTSUS Heading 8473 expressly excludes

covers, and, as such, does not encompass Apple's Smart Cover.

### B. Apple's Smart Cover Is Properly Classified Under HTSUS Heading 3926

Having concluded that "the Smart Cover," as "a cover," was "excluded from [HTSUS] [H]eading 8473," *Apple*, 375 F. Supp. 3d at 1303, the CIT turned to HTSUS Headings 3926 and 6307, *id.* at 1304. The CIT considered both headings, and concluded that, while "[t]he Smart Cover is . . . a composite good," made of plastic and fabric and therefore "prima facie classifiable under either" HTSUS Heading 3926 or 6307, because "[t]he plastic outer layer of the Smart Cover gives the merchandise its essential character," it was properly classified under HTSUS Heading 3926. *Id.* at 1304. Apple argues that the CIT "erred in applying [GRI 3(b)'s essential character analysis] to classify the Smart Cover under [HTSUS] Heading 3926," because, "[h]ad the [CIT] read Explanatory Note 84.73 correctly, it would have classified the Smart Cover under [HTSUS] Heading 8473[.]" Appellant's Br. 40 (capitalization normalized). The Government argues that the CIT correctly classified Apple's Smart Cover under HTSUS Heading 3926, rather than, as Customs had, under HTSUS Heading 6307, because "[t]he plastic Smart Cover is a composite good whose plastic outer layer provides its essential character[.]" Appellee's Br. 28 (capitalization normalized). We agree with the Government.

The CIT did not err in concluding that Apple's Smart Cover is properly classified under HTSUS Heading 3926. HTSUS Heading 6307 covers "[o]ther made up articles," of any textile material, "including dress patterns." HTSUS Heading 6307; *see* HTSUS Ch. 63 Note 1. HTSUS Heading 3926 covers "[o]ther articles of plastics and articles of other

materials of [HTSUS] [H]eading[s] 3901 to 3914."[6]  Apple's Smart Cover is composed of various materials including "microfiber lining" and a "plastic outer layer."  *Apple*, 375 F. Supp. 3d at 1304.  It is, therefore, a composite good, *see* GRI 3(b) (providing that a "composite good" is one "consisting of different materials or made up of different components"), and "prima facie[]classifiable under" either HTSUS Heading, GRI 3.  Because neither HTSUS Heading 3926 nor 6307 is more specific, *see* HTSUS Headings 3926 (providing a catch-all provision for "[o]ther articles of plastics"), 6307 (providing a catch all provision for "[o]ther made up [textile] articles"), we proceed to GRI 3(b).  GRI 3(b) provides that otherwise unclassifiable composite goods must be "classified as if they consisted of the material or component which gives them their essential character[.]" GRI 3(b).  Neither party challenges the CIT's finding that the Smart Cover's "plastic outer layer . . . [provides] its essential character."  *Apple*, 375 F. Supp. at 1304–05; *see* Appellant's Br. 40–41 (arguing that the CIT "erred" in its essential character analysis based on "the [CIT's] mistaken reading of Explanatory Note 84.73"); Appellee's Br. 28–31 (arguing that the Smart Cover's plastic outer layer gives it its essential character).  The Smart Cover therefore, is properly classified under HTSUS Heading 3926.  Accordingly, the CIT did not err in classifying Apple's Smart Cover under HTSUS Subheading 3926.90.99.

---

[6]    "Plastics" for the purposes of HTSUS Heading 3926 are "materials . . . which are or have been capable, either at the moment of polymerization or at some subsequent stage, of being formed under external influence (usually heat and pressure, if necessary with a solvent or plasticiser) by molding, casting, extruding, rolling[,] or other process into shapes which are retained on the removal of the external influence."  HTSUS Ch. 39 Note 1.

CONCLUSION

We have considered Apple's remaining arguments and find them unpersuasive.  Accordingly, the Judgment of the U.S. Court of International Trade is

**AFFIRMED**